# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

PHILLIP JELKS (#485250)                                          CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                             NO. 14-0521-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 18, 2015.

                                                RICHARD L. BOURGEOIS, JR.
                                                UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PHILLIP JELKS (#485250)** | **CIVIL ACTION** |
| **VERSUS** | |
| **N. BURL CAIN, ET AL.** | **NO. 14-0521-BAJ-RLB** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion for Summary Judgment of defendants Burl Cain, Cedric Ferguson and Trent Barton (R. Doc. 24). This motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Sgt. Cedric Ferguson, Major Trent Barton and Sgt. Eric Turner. The plaintiff complains that the defendants violated his constitutional rights in November, 2013, through sexual harassment and through subsequent excessive force and deliberate medical indifference. The plaintiff also asserts that the defendants thereafter falsified disciplinary charges against him and that the defendants' conduct was undertaken in retaliation for a prior lawsuit that the plaintiff had filed against prison officials.[1]

---

1. Defendant Eric Turner has not been served and has not appeared in this proceeding. A review of the plaintiff's original Complaint reflects that defendant Turner was not listed as a defendant in the Caption of the Complaint but was included in a list of defendants on page four thereof. *See* R. Doc. 1 at p. 4. The Court thereafter granted leave to amend the Complaint, *see* R. Doc. 10, and the plaintiff corrected this deficiency by including defendant Turner in the Caption of the Amended Complaint. *See* R. Doc. 11. Notwithstanding, through inadvertence, defendant Turner was not added as a defendant on the Court's Docket Sheet. The Court thereafter directed the United States Marshal's Office to serve the defendants. *See* R. Doc. 12. In response, the Marshal's Office sent the plaintiff a standardized Form USM-285 and instructed the plaintiff to complete and return the form, identifying the defendants to be served and their locations. Although the plaintiff returned the referenced form to the Marshal's Office, *see* R.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of an Investigation Report dated November 25, 2013, prepared by Lt. Doug McDonald (including copies of photographs taken of the plaintiff's injuries after the incident complained of), certified copies of the plaintiff's pertinent administrative remedy proceedings (including a copy of LSP Directive No. 09.002 re: "Use of Force," and copies of excerpts from the Camp J unit logbook for the dates November 19-20, 2013), certified copies of three (3) disciplinary reports issued against the plaintiff on November 19, 2013, prepared by Antonio Whitaker and defendants Cedric Ferguson and Eric Turner (charging the plaintiff with "Defiance" and "Aggravated Disobedience"), certified copies of documentation prepared in connection with a $31.00 restitution charge assessed against the plaintiff's inmate account for medical expenses resulting from the events of November 19, 2013, certified copies of Unusual Occurrence Reports dated November 19, 2013, prepared by Capt. John Sanders, Col. Jimmy Smith, Lt. Col. Antonio Whitaker, and defendants Cedric Ferguson and Eric Turner, certified copies of the plaintiff's Conduct Report and Location Sheet, certified copies of excerpts from the plaintiff's medical records, and the affidavits of Sgt. John Sanders and defendant Cedric Ferguson.

---

Doc. 14, the plaintiff did not include defendant Eric Turner in the list of defendants to be served. As a result, defendant Turner was not served, and although the plaintiff has been placed on notice of such non-service, *see, e.g.,* R. Doc. 24 at p.1 n. 2 (wherein the defendants explicitly advise that defendant Turner "has not been served"), the plaintiff has taken no action to remedy this deficiency. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against defendant Eric Turner be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon him. The Court further notes, in the alternative, that the plaintiff's claims asserted against this defendant would be subject to dismissal in any event because the plaintiff has failed to exhaust administrative remedies relative to defendant Turner in accordance with 42 U.S.C. § 1997e. *See* discussion, *infra.*

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that in November, 2013, defendant Cedric Ferguson approached the plaintiff and asked the plaintiff to perform oral sex. The plaintiff refused that request. Several days later, on November 19, 2013, allegedly without provocation and allegedly in response to the plaintiff's refusal to provide sexual favors, defendant Ferguson assaulted the plaintiff while the plaintiff was being returned to his housing unit.[2] According to the plaintiff, defendant Ferguson repeatedly punched the plaintiff in the face at that time, threw the plaintiff against a chair, and repeatedly slammed the plaintiff's head on the concrete floor, all while the plaintiff was in full restraints and was offering no resistance. According to the plaintiff, defendant Eric Turner was present during the referenced assault and either conspired with defendant Ferguson to cause the plaintiff harm or stood by and failed to take appropriate action to protect the plaintiff from defendant Ferguson's attack. The plaintiff further asserts that he was thereafter placed in a holding cell and, while there, was approached by defendant Trent Barton, who allegedly sprayed a chemical agent directly into the plaintiff's eyes. The plaintiff contends that this conduct by defendant Barton amounted to deliberate medical indifference because the defendant was allegedly aware that the plaintiff suffers with asthma and other medical complications. Finally, the plaintiff complains that the defendants issued false disciplinary charges against him, and he asserts a belief that the defendants' conduct was undertaken in retaliation for a lawsuit that the plaintiff had filed against "hi ranking security officers" at LSP.

---

2. There is some ambiguity in the plaintiff's Complaint relative to the date that defendant Ferguson allegedly assaulted the plaintiff. This ambiguity is clarified, however, by documentation prepared by prison officials in connection with the incident that reflects that the alleged assault occurred on November 19, 2013.

In response to the plaintiff's allegations, the defendants first contend that the plaintiff has failed to exhaust administrative remedies relative to certain of the claims and defendants named herein. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action or pursuing a claim in this Court with respect to prison conditions.[3] This provision is mandatory and applies broadly to "all inmate suits about prison life". *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Upon a review of the two (2) administrative grievances that the plaintiff submitted to prison officials relative to the claims asserted in this proceeding, the Court concludes that the defendants' motion is well-taken and should be granted. Specifically, the plaintiff submitted an initial grievance to prison officials on or about December 10, 2013, complaining about the

---

3. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

alleged assault by defendant Cedric Ferguson and asserting that the assault was motivated by retaliatory animus in response to the plaintiff's prior lawsuit against prison officials. There is no mention in the plaintiff's grievance, however, of any prior sexual proposal by defendant Ferguson, of the alleged presence of defendant Turner during the assault (or of any alleged conspiracy or wrongdoing by defendant Turner whatever), of the alleged subsequent use of chemical irritant by defendant Trent Barton, of any alleged deliberate indifference to the plaintiff's medical needs, of the alleged falsification of disciplinary reports after the incident, or of any wrong-doing by defendant Burl Cain in connection with the events of November 19, 2013. *See* R. Doc. 24-5 at p. 5. In response to the plaintiff's grievance, prison officials provided a written First Step Response on May 16, 2014, denying same upon a finding that the actions of defendant Ferguson had been reasonable and justified on the referenced date. *See id.* at p. 6. Whereas the plaintiff sought further administrative review in connection with that determination, prison officials issued a final Second Step Response on August 4, 2014, upholding the First Step decision. *See id.* at p. 11. In addition to the foregoing, while the first grievance was still pending before prison officials, the plaintiff submitted a second administrative grievance to prison officials on or about December 24, 2013. *See* R. Doc. 24-4 at p. 4. That grievance, however, was rejected without consideration because it was found to be duplicative of the prior grievance. Notwithstanding, a review of that second grievance reflects, in any event, that it similarly contains no mention of any request for sexual favors by defendant Ferguson, of any use of chemical irritant spray by defendant Barton, of any alleged deliberate medical indifference, of any alleged falsification of disciplinary reports, or of any alleged wrongdoing by defendant Cain. Further, whereas the second grievance does mention defendants Eric Turner and Trent Barton, the only factual assertion relative to defendant Turner is that this defendant allegedly provided

information to defendant Cedric Ferguson, prior to the assault, that the plaintiff was in possession of cigarettes, and the only factual assertion relative to defendant Barton is that this defendant participated in addressing the plaintiff's subsequent disciplinary proceedings. Accordingly, there is nothing in either of the plaintiff's grievances that would have placed prison officials on notice that the plaintiff was attempting to assert a claim of sexual misconduct against defendant Ferguson or any of the claims that he now seeks to assert against defendants Ferguson, Barton or Cain so as to "provide administrators with a fair opportunity under the circumstances to address the problem" now presented before this Court. *See Johnson v. Johnson, supra*, 385 F.3d at 517. Accordingly, the Court finds that the only claims that the plaintiff has properly exhausted in accordance with 42 U.S.C. § 1997e are (1) his claim regarding the alleged use of excessive force by defendant Cedric Ferguson on November 19, 2013, and (2) his claim that defendant Ferguson's conduct was motivated by retaliatory animus in response to a prior lawsuit filed by the plaintiff.

Turning to a consideration of the referenced claims that are properly before the Court, the Court first notes that the plaintiff has named defendant Ferguson in both the defendant's individual and official capacities. Section 1983, however, does not provide a federal forum for a litigant seeking monetary damages against a state official acting in an official capacity because such official is not seen to be a "person" under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim asserted against a state official in an official capacity for monetary damages is treated as a claim asserted against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim for monetary damages

asserted against defendant Ferguson in the defendant's official capacity is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendant in the defendant's individual capacity remains theoretically viable because a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose personal liability for actions taken by the official under color of state law, is not treated as a suit against the state. *Id.*

The defendant next asserts that he is entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendant contends that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights. The defendant contends, instead, that the evidence shows that the use of force on November 19, 2013, was reasonable and justified and was undertaken in response to aggressive conduct by the plaintiff – when the plaintiff threw a "fruit cup" at the defendant – which aggressive conduct prompted the defendant to employ force to physically take the plaintiff to the ground to restore order and prevent further confrontation.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable

state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[4]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims of excessive force and retaliation, the Court finds that the defendant's motion for summary judgment should be granted in connection with these claims. Specifically, the Court finds that the plaintiff's opposition and evidentiary showing are not sufficient to support a finding that there are genuine disputed issues of material fact in this case relative to these claims.

First, with regard to the plaintiff's claim of excessive force, a use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes

---

4. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to come forward with evidence sufficient to support a finding that there are disputed questions of material fact in this case regarding the objective reasonableness of the defendant's use of force on November 19, 2013. In response to the plaintiff's allegations, the defendant has introduced evidence reflecting that on the referenced date, the plaintiff was being escorted back to his cell, and the defendant and plaintiff became involved in a verbal altercation in the lobby of the plaintiff's cellblock housing unit. According to the defendant, this altercation culminated in the plaintiff throwing a "fruit cup" at the defendant. The plaintiff does not dispute this assertion. In fact, the Court notes that the plaintiff explicitly acknowledged, in the administrative grievance that he submitted to prison officials on December 24, 2013, that prior to the defendant's use of

force on November 19, 2013, the plaintiff "had [a] fruit cup in [his] hand and ... threw it at [defendant Ferguson]." *See* R. Doc. 36 at p. 13. The plaintiff further asserted in the referenced grievance that he took that action because the defendant had spat in the plaintiff's face. The defendant asserts that, in response to the openly aggressive and confrontational act by the plaintiff in throwing the fruit cup, the defendant utilized reasonable and necessary force to take the plaintiff to the ground and to regain control of the potentially dangerous situation. The question becomes, therefore, whether the defendant's use of force in response to the plaintiff's act of aggression was objectively reasonable or whether it instead rose to the level of excessive force prohibited by the Eighth Amendment. Ultimately, the Court concludes that the evidence submitted by the plaintiff is insufficient to refute the defendant's showing and to support a finding of excessive force in this case.

Interpreting the evidence in the light most favorable to the plaintiff, it appears that the plaintiff and defendant Ferguson became involved in a verbal dispute on the date of the incident, which dispute led to the defendant spitting in the plaintiff's face and then to the plaintiff responding by throwing a fruit cup at the defendant. The defendant then employed some degree of force to bring the plaintiff to the floor so as to restore order and to quell the developing disturbance. Thus, accepting the plaintiff's version of events, there was an escalating conflict between the parties, and the defendant may not have been entirely free from fault in causing the escalation. However, whereas the Court does not condone the defendant's action in spitting in the plaintiff's face, if this in fact occurred, this initial conduct by the defendant did not amount to excessive force or otherwise violate the plaintiff's federal constitutional rights. *See McBride v. Ausbie*, 2014 WL 5032720, *3 (N.D. Tex. Oct. 8, 2014) (concluding that a prisoner's claim that a security officer had spit on him was subject to dismissal as frivolous). *See also Gill v. Tuttle*,

93 Fed. Appx. 301, 303 (2d Cir. 2004) (finding that the action of a security officer in spitting upon a prisoner was only a *de minimis* use of force); *Harrington v. Rush*, 2009 WL 1616010, *2 (E.D. Ark. June 9, 2009) (finding that an officer's action in spitting at a prisoner, while perhaps sufficient to support a state law tort claim, was not sufficient to state a constitutional claim under § 1983). The Court further finds that, in the prison context, the defendant's action in spitting at the plaintiff, while reprehensible, cannot be seen to justify the plaintiff's aggressive response in escalating the violence and throwing a fruit cup at the defendant. Instead, by this action, the plaintiff created a potentially dangerous threat to security, and it was not objectively unreasonable for defendant Ferguson to respond to the dangerous confrontation by wrestling the plaintiff to the floor, subduing the plaintiff, and bringing the situation under control. This is particularly true in light of the fact that the plaintiff was in transit at the time of the incident and so was not confined in a cell or behind bars that would have limited his ability to attack or injure the defendant. In the context of excessive force claims, the courts have long recognized that great deference is due to prison officials who are dealing with potentially dangerous situations, and "prison officials often must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Lawrence v. Knighten*, 30 F.3d 1490, *2 (5th Cir. 1994). Accordingly, in the context of the situation that was presented, the Court is unable to conclude that the defendant's action in using some degree of force was objectively unreasonable or was undertaken "for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, *supra,* 559 U.S. at 37.

Further, although the plaintiff asserts that the defendant utilized more force than was justified under the circumstances, the plaintiff's medical records do not support this contention. Specifically, the plaintiff alleges that defendant Ferguson "beat [the plaintiff] down to the

ground," repeatedly punched the plaintiff in the face, "kept ... slamming [the plaintiff's] head on the concrete floor," and threw the plaintiff "against a chair," injuring the plaintiff's back. The plaintiff further alleges that, as a result of the defendant's actions, he sustained bruising and swelling to his facial area, a "split[]" left eye, a "deep gash" on his left leg, and injury to his lower back. Notwithstanding these assertions, the written medical evaluation of the plaintiff's condition after the incident reflects only a small laceration to his left cheek, minor abrasions to his wrists, caused by handcuffs, and minor areas of redness on his back. *See* R. Doc. 24-3 at p. 14. The plaintiff's physical examination was otherwise noted to be "unremarkable," except for several "old" or "healing" lacerations that were apparently unrelated to the incident complained of. *See id.* In addition to the foregoing, photographs were taken of the plaintiff after the incident, and these photographs are fully consistent with the referenced medical notations, reflecting only minor objective injuries in the form of a small laceration to his cheek and minor abrasions to his wrists. *See id.* at pp. 13 and 15-16. These minor injuries are not what would be expected if the use of force in this instance had been as described by the plaintiff, including repeated punches to the plaintiff's face and repeated slamming of the plaintiff's head on the concrete floor. As noted above, while the existence of minimal injuries does not alone warrant the rejection of a claim of excessive force, the minimal nature of a claimant's injuries may be relevant to the question whether the use of force was reasonable or excessive under the circumstances presented. In addition, when the objective findings noted in an inmate's medical records reflect no evidence of injuries consistent with his allegations, the Court is authorized to conclude that the inmate's allegations are implausible. *See Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999), *citing Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990).

Based on the foregoing, the Court concludes that the plaintiff has not presented sufficient evidence to contravene the evidence presented by the defendant in connection with the instant motion, much less evidence sufficient to meet the plaintiff's burden of proof, to rebut the defendant's assertion of qualified immunity, and to show the existence of a genuine issue of disputed fact regarding whether defendant Ferguson utilized unreasonable or constitutionally excessive force on the date in question. *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified immunity on motion for summary judgment). The competent evidence adduced by the defendant, supported by affidavits and documentation, reflects that the use of force against the plaintiff on November 19, 2013, was objectively reasonable in light of the situation presented and was not for the sole purpose of causing harm but, instead, was for the purpose of restoring order and maintaining control in response to an inmate who admittedly engaged in aggressive conduct toward the defendant. It is also clear in this case that the plaintiff was seen by medical personnel after the brief application of force, and was not noted to exhibit injuries of significance. Accordingly, based upon the plaintiff's failure in this case to present evidence of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendant's motion is well-taken and that, on the record before the Court, the defendant is entitled to summary judgment in connection with the plaintiff's claim of excessive force.

The plaintiff also alleges that the actions of the defendant were motivated by retaliatory animus in response to a lawsuit that the plaintiff had filed against prison officials. In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of his First Amendment constitutional right to seek redress of grievances may amount to a violation of the

inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendants, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Further, the inmate must provide more than a mere personal belief that he is the victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

Applying the foregoing standard, the Court finds that the plaintiff's claim of retaliation is deficient as a matter of law. First, the plaintiff provides nothing more than a mere personal belief that the defendant's conduct was undertaken in response to the plaintiff's prior lawsuit. In fact, the plaintiff asserts at several points in his Complaint that the defendant's conduct was undertaken, instead, because the plaintiff refused to engage in oral sex with the defendant. *See, e.g.*, R. Doc. 11 at pp. 4 and 10. Thus, other than a conclusory assertion that the defendant attacked the plaintiff because the plaintiff was "currently sueing several hi ranking security

officers at Angola State Penitentiary," *see id.* at p. 10, there are no factual allegations that support that assertion. Specifically, the plaintiff does not allege that defendant Ferguson was or is a party to the prior litigation or otherwise had any reason to retaliate because of it, and the plaintiff does not allege that defendant Ferguson said or did anything prior to, during, or after the incident of November 19, 2013, to suggest a retaliatory connection between the defendant's actions and the prior lawsuit. Thus, the plaintiff has provided only his personal belief that the defendant's conduct was motivated by retaliatory animus, and his mere personal belief is not sufficient to support this claim. Moreover, the plaintiff would be unable, in any event, to establish the element of causation in connection with the defendant's actions, *i.e.*, that "but for" an alleged improper retaliatory motive, the incident would not have occurred. Specifically, the plaintiff has effectively conceded that there was an independent basis for the defendant's conduct on the referenced date, the need to respond to the plaintiff's aggressive conduct in throwing a fruit cup at the defendant. Thus, the plaintiff cannot establish that, but for a retaliatory motive, the defendant would not have acted as he did. For this reason, the plaintiff's claim of retaliation is not supported by the record or the plaintiff's allegations, and the defendant is entitled to summary judgment in connection therewith.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering that the Court recommends the dismissal of the plaintiff's

federal claims asserted herein, the Court further recommends that supplemental jurisdiction be declined in connection with the plaintiff's potential state law claims.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendant Eric Turner be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's potential state law claims and that the Motion for Summary Judgment of the remaining defendants (R. Doc. 24) be granted, dismissing the plaintiff's claims asserted against defendants Burl Cain and Trent Barton, without prejudice, for failure to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e, and dismissing the plaintiff's claims asserted against defendant Cedric Ferguson, with prejudice, upon a finding that defendant Ferguson is entitled to qualified immunity in connection with the plaintiff's claims, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 18, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**